Filed 9/24/20  P. v. Magee CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. VINCENT LLOYD MAGEE, Defendant and Appellant. | B301576 (Los Angeles County Super. Ct. No.BA470704) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed as modified.

Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Nancy Lii Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Vincent Magee fatally stabbed Robert Wheeler during a late-night altercation in Skid Row. Defendant argued that he acted in self-defense after Wheeler made an unprovoked attack on him with a knife. To bolster that contention, defendant sought to introduce evidence that Wheeler had two recent convictions for felony vandalism and an approximately 20-year-old robbery conviction; defendant argued the convictions demonstrated Wheeler's "very violent spontaneous character." The trial court excluded the evidence. The jury rejected defendant's theory of self-defense and found him guilty of second degree murder.

On appeal, defendant contends the trial court erred as a matter of law by excluding his proffered evidence of Wheeler's convictions. We disagree. Although Evidence Code section 1103[1] authorizes the admission of evidence offered by the defendant to demonstrate the victim's character, the trial court properly excluded the evidence on relevance grounds. The court did not err in ruling that a 20-year-old robbery conviction and two convictions for breaking windows were not relevant to show that Wheeler spontaneously lunged at defendant with a knife on this occasion. Even if it did, the error was harmless.

However, we agree with defendant and the Attorney General that the one-year sentencing enhancements the trial court imposed under Penal Code section 667.5, subdivision (b) are no longer authorized and must be reversed. We further agree with both parties that the abstract of judgment incorrectly reflects the trial court's oral pronouncement regarding the imposition of fees and fines. We accordingly modify defendant's

_____

[1]All further statutory references are to the Evidence Code unless otherwise indicated.

2

sentence to strike the one-year enhancements and order the abstract of judgment corrected. The conviction is otherwise affirmed as modified.

## PROCEDURAL HISTORY

An information filed February 5, 2019 charged defendant with the August 20, 2018 murder of Wheeler. (Pen. Code, § 187, subd. (a).) The information further alleged that defendant personally used a knife during the offense (*id.* § 12022, subd. (b)(1)) and did not remain free of custody for five years after four separate felony drug convictions (*id.* § 667.5, subd. (b)).

Defendant proceeded to jury trial on April 4, 2019. The jury found defendant guilty of second degree murder and found the personal use allegation true. Defendant waived his right to a jury trial on the priors, which he subsequently admitted.

The trial court sentenced defendant to 15 years to life for the murder and imposed an additional consecutive term of one year for the weapons enhancement. The court also imposed an additional one-year term for each of the four prison priors, bringing defendant's total sentence to 15 years to life plus five years. Defendant stipulated to restitution of $7,500, and the trial court declined to impose other fines or fees.

Defendant timely appealed.

## FACTUAL BACKGROUND

### I. Prosecution Evidence

Skid Row is an area of Los Angeles in which thousands of homeless individuals reside. Debra W. testified[2] that she resided in a tent on Skid Row on August 20, 2018. Around 3:10 that

---

[2]Debra testified at the preliminary hearing but was unavailable to testify at trial. Her testimony from the preliminary hearing was read into the record at trial.

3

morning, while inside her tent, Debra heard a verbal altercation between two men.  One of the men, whom Debra recognized from the area and identified in court as defendant, was demanding that the other man return his cocaine pipe.  The other man said, "Wait, let me just finish doing what I'm doing."  Debra then saw the other man take off "running across the street," to a nearby homeless shelter called the Midnight Mission.  Defendant ran after him.

While the two men were standing outside the Midnight Mission, Debra saw defendant stab the other man.  She demonstrated a "stabbing/slashing down motion" "in the neck area."  The victim "stagger[ed]" into the middle of the street, where he collapsed.  Debra immediately called an ambulance.

When police arrived on the scene, Debra provided a description of defendant to  Los Angeles Police Department (LAPD) detective Jonathan Vanderlee.  A few days later, Debra went to the police station and selected defendant's photo from a photo array of possible suspects.

On cross-examination, Debra acknowledged that she "probably" had used cocaine earlier on the evening of August 20, 2018, but said she was not high when she witnessed the stabbing incident.  Debra also admitted to suffering previous convictions for petty theft and that she had an outstanding warrant.  She denied asking the police for money in exchange for her assistance.

Detective Vanderlee testified that he responded to a report of a murder near the Midnight Mission around 5:30 a.m. on August 20, 2018.  At the scene, which other officers had already secured, Vanderlee found the body of a deceased man lying supine in the middle of San Julian Street; he had been

4

pronounced dead at 3:38 a.m.  The man, who was later identified via his fingerprints as Robert Wheeler, "had quite a lot of blood on his face and beard, as well as on his chest."  Vanderlee observed a single stab wound to Wheeler's upper right chest. Wheeler was clutching "a small, off-white, rock-like substance resembling rock or crack cocaine" in his left hand but did not have any weapons on him.  A trail of fresh blood ran from Wheeler's body to the Midnight Mission.

Vanderlee obtained and viewed footage from a surveillance camera affixed to the outside of the Midnight Mission and two LAPD-owned cameras mounted on light poles in the area.  The footage, which was played for the jury and admitted into evidence, showed a man wearing a black shirt, blue jeans, and light-colored shoes sweeping or cleaning near some tents on Sixth Street at approximately 3:07 a.m. or 3:08 a.m.  Vanderlee identified the man in court as defendant.  At approximately 3:09 a.m., defendant left the tent area and walked southbound on San Julian.  Defendant then stepped behind a parked truck; he remained out of view of the cameras for approximately two minutes.

The next event captured by the cameras was Wheeler running out from behind the parked truck.  Defendant chased after him, holding a knife.  Defendant made "a slashing or stabbing motion with the knife," after which Wheeler staggered into the street and collapsed at approximately 3:12 a.m. Vanderlee testified that Wheeler's path from the Midnight Mission to the middle of the street was consistent with the blood trail he observed at the scene.  Vanderlee further testified that at no point in the video footage did it appear that Wheeler did anything aggressive toward defendant; it did not appear that

5

Wheeler "was trying to do anything other than get away from the defendant."

Defendant walked back to the tent area he had been sweeping. When he arrived, he "appeared to wipe off the knife on a cloth or shirt that was hanging nearby." Defendant then walked across the street to some trees and disappeared from view for approximately 20 seconds before returning to the tent area without the knife. Defendant entered a tent and remained out of view for approximately seven or eight minutes. When he emerged from the tent at approximately 3:23 a.m., he was wearing a hat and a white shirt.

Police recovered a black-handled knife with an approximately five-inch blade from the area near the tree defendant had briefly visited. It had blood on it. An LAPD criminalist testified that DNA from blood on the knife was a very high probability match for Wheeler. DNA from two individuals was found on the knife handle; Wheeler was the "major contributor" and "the minor was too minute to tell who it really was." The criminalist initially testified that the DNA on the handle was "touch DNA," which comes from cells left behind when an object is grabbed, but later acknowledged that the DNA on the handle could have been moved there from the blade when the blade was wiped off. Ultimately, she stated that she could not testify as to how the DNA got onto the handle.

Los Angeles County deputy medical examiner Dr. Lawrence Nguyen testified that he performed an autopsy on Wheeler's body. Nguyen found a single stab wound to Wheeler's right chest. The wound, which was approximately five inches deep, penetrated Wheeler's skin, the bone and cartilage of his rib, and his lung. It also injured his pulmonary artery and bronchus.

6

Nguyen opined that "considerable force" would be required to puncture a rib, and noted that "guard marks" left on the skin by the handle of the knife suggested the blade was fully plunged into Wheeler's body. Nguyen concluded that the stab wound caused Wheeler's death. Wheeler did not have any defensive wounds, but a toxicology test revealed that he had cocaine in his blood.

LAPD officer Andre Linnear arrested defendant later in the day on August 20, 2018. Linnear recovered a small plastic baggie containing apparent methamphetamine from inside defendant's sock. He also recovered a glass pipe from defendant's front pocket; Linnear testified that pipes of that type are usually used to smoke methamphetamine and crack cocaine. Vanderlee testified that none of Wheeler's property was found on defendant's person or in his tent. He also testified that defendant did not have any black eyes, stab wounds, scratches, bleeding, fresh cuts, or swelling on his body at the time of the arrest.

## II. Defense Evidence

Defendant recalled Vanderlee, who testified that Debra W. asked him and his partner for money and hotel vouchers when she came to the police station to give her statement. She also asked if she could use the electrical outlet to charge her phone. Vanderlee said it was not uncommon for homeless witnesses to make such requests. On cross-examination, he stated that he never showed any of the video footage to Debra.

Defendant testified that he had been homeless on and off for about 30 years due to a drug problem and lived on Skid Row at the time of the incident. He had four convictions for drug offenses but had never been convicted of hurting anyone. Defendant testified that living on Skid Row was "hard" and "dangerous," because so many people with drug problems or

7

mental illness live there and "you have to watch your back all the times, because . . . anyone can just snap at any point." He saw people "doing crazy things" "every day."

Defendant woke up around 3:00 a.m. on August 20, 2018. Shortly after he woke up, he swept and cleaned outside his tent. Defendant then went to the Midnight Mission to see if anyone was hanging out there; he testified that the shelter served as a gathering point for Skid Row residents. No one was there, so defendant decided to go back to his tent. On the way, he saw Wheeler standing behind some parked trucks. Defendant had never seen Wheeler before.

Without saying a word, Wheeler "lunge[d]" at defendant with a knife he was holding in his right hand. Based on his own experiences with drugs and living on Skid Row, defendant concluded from Wheeler's "bug-eyed" expression that Wheeler was high on drugs or mentally ill. Fearing for his life, defendant "made a move" and grabbed the knife away from Wheeler. Defendant explained that he was able to get the knife away because Wheeler kept his left hand "balled up" during the scuffle. Defendant denied arguing with Wheeler about drugs or drug paraphernalia.

After defendant gained possession of the knife, he noticed that Wheeler's left hand remined clenched. Defendant testified he was "thinking that something else is in it, like maybe he had another weapon or something." Wheeler then "makes a move" and "takes off." Unsure if Wheeler was "trying to get around me or not, circle around me or get a better advantage," defendant "t[ook] off" in the same direction as Wheeler. Defendant explained that his "intentions were just to stop the guy because I didn't know what he was trying to do. He takes off, but I don't

8

know if he was trying to really get away or was he trying to maybe look for anything to try to hurt me with."

Defendant stabbed Wheeler because he feared for his life. Defendant thought he had "just poked at his skin, . . . nothing violent, because he's still standing up like this" and still had his left hand "wadded up." Defendant was "thinking the guy is okay," because Wheeler then "goes walking on down the street." Defendant walked the other way, back to his tent, and did not see Wheeler collapse.

On cross-examination, defendant explained that he did not simply walk away from Wheeler or use his cell phone to call for assistance because everything happened very fast and he believed Wheeler had another weapon concealed in his fist. Defendant stated that he disagreed with the deputy medical examiner's testimony that Wheeler was stabbed with substantial force; he testified that the knife "looks like it's pretty sharp" and could "cut through a rack of meat without any force." Defendant explained, "If I wanted to kill the guy, I would have stabbed him multiple times if I wanted to just kill him, if I wanted him dead. I did not." He further explained that he wiped the knife off after the incident because he thought the police would not believe his story of self-defense if they found Wheeler's blood and defendant's fingerprints on the knife. Defendant subsequently disposed of the knife because he did not want it.

## DISCUSSION

## I. Character Evidence of Victim

Defendant contends the court erred by precluding admission of Wheeler's convictions for felony vandalism and robbery. He argues that the trial court misapplied section 1103 by ruling that he had to be aware of Wheeler's convictions for

9

them to be admissible. He further contends the exclusion of the evidence prejudiced him and deprived him of his constitutional rights to due process, a jury determination of guilt, a fair trial, and to present a defense.

### A. Background

At sidebar during the prosecutor's case-in-chief, counsel raised the issue of introducing evidence that victim Wheeler suffered two recent convictions for felony vandalism. Defense counsel asserted that Wheeler suffered one of the convictions after he "[j]ust inexplicably smashed in the glass" of a 24-hour restaurant while customers were present, and the other after he "bashed in the glass" at the L.A. Convention Center while it was "teeming with people." He contended that the evidence supported a theory of self-defense. The prosecutor argued the convictions were not relevant because she had not introduced any evidence of character for violence and "vandalism isn't technically a violent offense." The court deferred ruling.

Defense counsel raised the issue again after defendant's direct examination, asserting that he wanted to introduce evidence of Wheeler's vandalism convictions under section 1103. The prosecutor objected "in totality to everything having to do with character evidence of the victim based on vandalisms that weren't directed at any people, they were directed at property." Conceding no one was injured as a result of the vandalism, defense counsel asserted that "doesn't matter," because the act of throwing a rock through a window is "very, very violent" and "tend[s] to show very violent spontaneous character" consistent with defendant's testimony about Wheeler mounting an unprovoked attack on him.

10

The court asked defense counsel if "smashing the window [is] the kind of thing that comes in under this doctrine," and counsel stated it was because "[i]t's offered to show a character trait of a victim, of an individual." The court asked defense counsel why that was relevant, and he explained, "to show this erratic behavior of the victim who died in this case." The court remarked that vandalism is "radically different conduct" than the personal attack that defendant described in his testimony, and asked counsel to provide case law in support of his argument.

The following day, defense counsel advised the court that he also planned to introduce evidence that Wheeler suffered a robbery conviction in 2000. The court stated, section "1103 just talks about using it, it still has to be relevant. So that's the question I have. . . . [Section] 1103 doesn't make it relevant. It just says you can use it for this purpose." The court told counsel it would defer ruling until it heard the remainder of defendant's testimony.

At the close of defendant's testimony, outside the presence of the jury, defense counsel moved to introduce Wheeler's robbery conviction under section 1103. He explained that "the purpose is to show Mr. Wheeler's proclivity toward aggressive and violent behavior," and robbery "is clearly a violent aggressive act." Counsel also moved to introduce the two felony vandalism convictions "to show aggressiveness of that victim. Otherwise, the appearance to this jury is that Mr. Wheeler is just this homeless poor guy on Skid Row who did nothing to provoke this attack, you know, has nothing in his background to suggest that he was ever likely to do this." The prosecutor disagreed, arguing that "this vandalism prior conduct is irrelevant and improper"

11

because it "doesn't go to self-defense" and "doesn't go towards violence towards a person."

The prosecutor further contended, "there is no evidence at all that the defendant knew that Mr. Wheeler had these prior vandalism convictions and that those convictions put Mr. Magee, the defendant, in fear of Mr. Wheeler as a result of these rock-throwing incidences. That's not what the testimony is. . . . It hasn't been alleged that Mr. Wheeler threw anything. So it's not relevant." The prosecutor argued that the robbery conviction also should be excluded due to its age and lack of facts regarding whether force was even used: "[i]t could have just been fear." She additionally pointed out that defense counsel had not provided any authority in support of his position.

Defense counsel responded that the convictions did not have to be relevant to self-defense because they were relevant to Wheeler's "propensity to aggressive, violent behavior." He continued, "The nexus is that you have a man out there who is committing unprovoked attacks." The court interjected, "On windows," and defense counsel asserted that the prior convictions showed that Wheeler was "unnecessarily violent." The court reiterated that the prior conduct had to "be relevant to this occasion," and "showing someone is violent in general doesn't make that a self-defense in this case." Defense counsel again asserted that the prior crimes were relevant "unprovoked aggressive criminal conduct."

The court observed that defendant did not know Wheeler prior to the incident. Defense counsel responded that "doesn't matter" and vaguely referred to a case from 1967.[3] The trial

_____

[3]The case, for which defense counsel did not provide a citation, appears to have been *People v. Smith* (1967) 249

12

court pointed to *People v. Tafoya* (2007) 42 Cal.4th 147, 183 (*Tafoya*) and *People v. Minifie* (1996) 13 Cal.4th 1055, 1065-1069 (*Minifie*), for the proposition that prior conduct of a victim is relevant to self-defense only if the defendant is aware of it. Defense counsel again asserted that he wanted to prove Wheeler was aggressive, and the court responded, "it's untethered to self-defense. You . . . can't just dirty up a victim by saying he's got a tendency for aggression without tying it to why the defendant would act in self-defense." Defendant counsel stated that his understanding was "that when you want to prove aggressive behavior on the part of a victim that this type of criminal disposition propensity can come in, and we opened the door."

The court ruled the evidence inadmissible. It explained, "you might have an exception to the hearsay rule, but if the hearsay testimony that's subject to an exception isn't relevant to any issue of the case, that doesn't come in. So this is no different. [Section 1103] just says this is not precluded, but it's still got to be relevant. And that's why I cited the *Tafoya* case, because it specifically talks about the relevance aspect." The court added, "Those are the main grounds, but I also agree with the People as to what was last stated."

---

Cal.App.2d 395. We note that *Smith* supports defendant's contention. (See *id.* at p. 404 ["The law recognizes the well established fact in human experience that the known reputation of an assailant as to violence, even if specific acts are not within the knowledge of a person assaulted, has a material bearing on the degree and nature of apprehension of danger on the part of the person assaulted (and further even if the reputation is unknown) to show that one who is turbulent and violent may more readily provoke or assume the aggressive in an encounter."].)

## B. Standard of Review

We review a trial court's exclusion of evidence for abuse of discretion. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 828; see also *People v. DelRio* (Aug. 31, 2020, B298637) ___, Cal.App.5th ___, [2020 WL 5104917]. (*DelRio*).) We are not persuaded by defendant's assertion that we should review the ruling de novo. We agree, however, that "[a] ruling resting on a demonstrable error of law constitutes an abuse of discretion." (*People v. Cooper* (2007) 148 Cal.App.4th 731, 742.)

## C. Analysis

As a general rule, evidence of a person's character is inadmissible to prove his or her conduct on a specified occasion. (§ 1101, subd. (a).) This rule "has a handful of exceptions." (*DelRio*, *supra*, 2020 WL 5104917 at p. *4; see also § 1101, subd. (a).) Among them is section 1103, subdivision (a), which provides: "In a criminal action, evidence of the character or trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character. [¶] (2) Offered by the prosecution to rebut evidence adduced by the defendant under paragraph (1)." As explained recently in *DelRio*, *supra*, "this exception allows what is usually forbidden: it permits [defendant] to introduce evidence [that the victim] had a propensity for violent aggression. This evidence would aid [defendant']s effort to prove that, at the crime scene, [the victim] was violently aggressive, which forced [defendant] to resort to deadly self-defense." (*DelRio*, *supra*, 2020 WL 5104917, at p. *4.)

14

We agree with defendant's contention that a defendant need not have knowledge of a victim's prior misconduct to introduce it under section 1103. He relies on the same cases collected recently in *DelRio*, *supra*, 2020 WL 5104917, at p. *5, with which we have no quarrel. As explained in a leading treatise, evidence of a victim's violent character may "tend[] to show that the victim was probably the aggressor" even if that character was not known to the defendant at the time. (1 Witkin, Cal. Evidence (5th ed. 2012) Circumstantial Evidence, § 59, p. 437.) This principle has long been recognized in California case law. (See, e.g., *People v. Shoemaker* (1982) 135 Cal.App.3d 442, 446 ["in a prosecution for a homicide or an assaultive crime where self-defense is raised, evidence of the violent character of the victim is admissible to show that the victim was the aggressor" (footnote omitted)].)

The trial court's reliance on *Minifie*, *supra*, 13 Cal.4th 1055 and *Tafoya*, *supra*, 42 Cal.4th 147 was misplaced. *Tafoya*, which cites *Minifie*, is most illustrative. In *Tafoya*, a defendant claiming self-defense against murder charges sought to introduce a search warrant affidavit stating that an affiliate of his victims, Gattenby, possessed explosives and had a reputation for dangerousness. Defendant asserted that he feared the victims based on their association with Gattenby, but did not make an offer of proof that he knew of Gattenby's reputation for dangerousness. (*Tafoya*, *supra*, 42 Cal.4th at p. 164.) The trial court found that the affidavit regarding Gattenby was irrelevant absent a showing that defendant had reason to fear Gattenby, and the Supreme Court affirmed. (*Id.* at pp. 164-165.) It explained that "evidence that Gattenby was dangerous was relevant to defendant's claim of self-defense only if defendant

15

knew of Gattenby's reputation for dangerousness and was afraid of him." (*Id.* at p. 165 [citing *Minifie, supra,* 13 Cal.4th at pp. 1065-1069.) "Defendant, however, presented no evidence he knew of Gattenby's reputation for dangerousness or of Gattenby's association with [the] murder victims . . . . Indeed, defendant never testified that he had even seen Gattenby at [the victim's] house on the day of the murders. Thus, Gattenby's presence at the house was not part of defendant's claim of self-defense. Gattenby, moreover testified that, before the day of the murders, he had seen defendant only once and did not know his name. No evidence was presented at trial that Gattenby acted in an aggressive manner toward defendant. . . ." (*Ibid.*) In *Tafoya,* the only way Gattenby's alleged reputation for violence could be relevant to the defendant's self-defense theory was if the defendant had prior awareness of his violent tendencies. Here, in contrast, defendant testified that Wheeler acted aggressively toward him by lunging at him with a knife. *Tafoya* thus was inapposite to defendant's theory.

The trial court abused its discretion to the extent it ruled that defendant had to have knowledge of Wheeler's character to introduce it under section 1103. The problem for defendant, however, is that this was not the only basis for the trial court's decision. The trial court also ruled that the evidence was not relevant. This ruling was well within the trial court's discretion.

"No evidence is admissible except relevant evidence." (§ 350.) Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.) The trial court has an obligation to exclude evidence that does not meet this standard. (*People v. Gutierrez, supra,* 45 Cal.4th at p. 828.)

16

Defendant contended that Wheeler's convictions for felony vandalism were relevant to show that Wheeler possessed a "very violent spontaneous character" that would make him more likely to mount an unprovoked knife attack on defendant. However, even if Wheeler spontaneously committed the acts of vandalism, "vandalism is not a crime of violence against a person." (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1291.) The vandalism statute criminalizes the act of causing damage or destruction "with respect to any real or personal property not his or her own." (Pen. Code, § 594, subd. (a).) The statute says nothing about acting with spontaneity or violence, and vandalism is not among the numerous crimes defined as "violent felonies" in Penal Code section 667.5, subdivision (c). Defendant has not pointed to any authority in support of his contention that vandalism "is highly probative on the question whether the person has a trait of character for violence." The trial court did not abuse its discretion in concluding that the vandalism convictions were not relevant to show Wheeler had a violent character.

Robbery, which requires the use of force or fear to take another's property (Pen. Code, § 211), is a violent felony. (See Pen. Code, § 667.5, subd. (c)(9); see also *id*. § 1192.7, subd. (c)(19) [defining robbery as a "serious felony"].) The trial court nevertheless acted within its discretion when it concluded that Wheeler's 20-year-old robbery conviction was not relevant to prove he wielded a knife at defendant on the day of the incident. The record contains no information about the factual underpinnings of the robbery conviction, such as whether Wheeler used a weapon. It likewise does not suggest that Wheeler took any action suggestive of a robbery, such as demanding property from defendant. Moreover, the trial court

17

adopted the prosecutor's argument that the conviction was stale, which is a valid consideration under section 352; it was not an abuse of discretion for the trial court to conclude that a 20-year-old conviction would be more prejudicial than probative. (See § 352, subd. (b).)

Defendant contends the court's evidentiary rulings deprived him of his constitutional rights to due process, a jury determination of guilt, a fair trial, and to present a defense. He asserts that the "exclusion of highly probative evidence of Wheeler's violent and explosive tendencies rendered [his] trial neither fair nor reliable," deprived the jury of "strongly corroborat[ive]" evidence supporting his testimony, and deprived his counsel of the ability to persuasively argue that he acted in self-defense. We disagree.

"[T]he application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution." (*People v. Marks* (2003) 31 Cal.4th 197, 227.) Contrary to defendant's suggestions, the evidence of Wheeler's convictions was not vital to his theory of self-defense, and its exclusion did not deprive him of the right to assert a defense. Indeed, the trial court instructed the jury on self-defense despite expressing reservations about its applicability in this case. Defense counsel also argued self-defense during closing. He characterized Wheeler as a dangerous "nomad, roaming the streets of Skid Row with a five-inch blade with his touch DNA on the handle while high on crack."

Defense counsel additionally alluded to Wheeler's criminal past, which he inferred from the presence of Wheeler's fingerprints in the LAPD database: "We know that you have a man with a criminal record. We know that a man was high on

18

crack, and we know that the man had a knife. This is not an altar boy, this is not Prince Charming, and this is not a Vienna choir boy. This is somebody who is out to hurt people." Direct evidence of Wheeler's prior convictions was not necessary to support these arguments in light of the circumstantial evidence on which defense counsel relied: testimony that Wheeler appeared "bug-eyed" and under the influence, had cocaine in his system, had his DNA on the knife handle, and was identified by the presence of his fingerprints in a police database.

Even if the court did err in excluding the evidence, which it did not, the error would not have been prejudicial. Because defendant's constitutional rights were not implicated, we review allegations of error under the "reasonable probability" standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Marks*, *supra*, 31 Cal.4th at p. 227.) That is, we ask whether it is "reasonably probable that a result more favorable to defendant would have been reached in the absence of the error." (*People v. Watson*, *supra*, 46 Cal.2d at p. 837.) We conclude it is not.

Even if the jury believed defendant's testimony that Wheeler attacked him without provocation, the video evidence showed that defendant subsequently chased and stabbed Wheeler while Wheeler was running away from him. Vanderlee testified that Wheeler did not do anything aggressive toward defendant while defendant chased him in view of the cameras, and percipient witness Debra W. testified that Wheeler was running away from defendant when defendant stabbed him. There was no evidence that Wheeler had a weapon of any kind, and defendant's claim that he feared Wheeler might be going to get a weapon is not a valid basis for a claim of self-defense, which

19

requires a threat of imminent harm. (See *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.)

Moreover, the jury rejected defendant's self-defense theory despite hearing scientific evidence corroborating defendant's impression that Wheeler was under the influence at the time of the incident. It is not reasonably probable that the jury would have been more persuaded that Wheeler acted erratically toward defendant if it had known he had two convictions for vandalism and a 20-year-old conviction for robbery.

## II. Prison Priors Enhancements

A recent change to Penal Code section 667.5, subdivision (b), effective January 1, 2020, limits one-year prior prison term enhancements to cases in which the prior was for "a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." The change in Penal Code section 667.5, subdivision (b) is retroactive to cases that are not yet final. (*People v. Winn* (2020) 44 Cal.App.5th 859, 872 (*Winn*).)

The trial court imposed four one-year prison priors based on defendant's prior convictions for drug offenses under the Health and Safety Code. Defendant asserts that the one-year enhancements are no longer authorized and must be stricken under the now-operative version of Penal Codd section 667.5, subdivision (b). The Attorney General agrees.

Because defendant's prior prison terms were not served for a sexually violent offense, his Penal Code section 667.5, subdivision (b) enhancements are unauthorized under the amended statute. We therefore strike the enhancements under Penal Code section 667.5, subdivision (b), and modify the judgment accordingly. (See *Winn, supra*, 44 Cal.App.5th at pp. 872-873 [where the trial court imposed the maximum sentence,

20

the matter need not be remanded for resentencing after striking a section 667.5, subd. (b) enhancement].)

## III. Error in Abstract of Judgment

At the sentencing hearing, the court orally stated that it "won't impose any fines or fees" due to a lack of evidence of defendant's ability to pay them. Notwithstanding this oral pronouncement, both the minute order documenting the sentencing hearing and the abstract of judgment state that the court imposed a restitution fine of $300 and a parole revocation fine of $300. Defendant contends the abstract of judgment must be corrected to conform to the court's oral pronouncement. Respondent agrees.

"The trial court is generally required to include all aspects of a judgment in its oral pronouncement of judgment. [Citation.] Any discrepancy between the judgment as orally pronounced and as recorded in the clerk's minutes or abstract of judgment is presumed to be the result of clerical error. [Citation.] The abstract of judgment 'does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize.' [Citation.]" (*People v. Leon* (2020) 8 Cal.5th 831, 855.) Courts may correct clerical errors at any time, and appellate courts may order an abstract of judgment to be corrected if it does not accurately reflect the proceedings of the sentencing court. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We therefore order the trial court to correct the abstract of judgment to reflect that neither restitution nor parole revocation fines were imposed.

## DISPOSITION

The judgment is modified to strike the four one-year enhancements imposed under Penal Code section 667.5,

subdivision (b).  The judgment is otherwise affirmed as modified. The clerk of the superior court is directed to prepare an amended abstract of judgment striking the Penal Code section 667.5, subdivision (b) enhancements and indicating that neither restitution nor parole revocation fines were imposed and forward it to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

WILLHITE, ACTING P.J.

CURREY, J.